843 So.2d 317 (2003)
Cynthia Ann BOYKIN, Appellant,
v.
Robert Brian BOYKIN, Appellee.
No. 1D02-3392.
District Court of Appeal of Florida, First District.
April 8, 2003.
*318 John S. Mills, Esq. of The Mills Firm, Jacksonville, for Appellant.
Terrance A. Jones, Esq., Orange Park, for Appellee.
PER CURIAM.
Appellant, the former wife, challenges an order modifying the final judgment of dissolution of marriage changing primary custody of the parties' child from her to appellee, the former husband. The former wife raises several arguments on appeal. She first argues that the trial court erred in basing its modification of custody on the general master's finding that the former husband met his extraordinary evidentiary burden for granting the modification, as the record is devoid of competent, substantial evidence to support a finding of a substantial and material change in circumstances. Because the general master's report lacked competent, substantial evidence of a substantial and material change in circumstances to support a change of custody, the trial court erred in basing its final judgment modifying custody upon such. We, therefore, reverse the final judgment. As we reverse, we decline to address the former wife's remaining issues on appeal.
On December 30, 1999, the trial court entered the final judgment of dissolution of the parties' marriage. The final judgment provided for shared parental responsibilities between the parties and granted the former wife primary residential custody of *319 the child. Prior to entry of the final judgment of dissolution, the former wife began residing with her boyfriend, who was the father of her second child. The former wife and the child continued to reside with the former wife's boyfriend until December of 2000, when the former wife asked the former husband, who had remarried, to care for the parties' child until the end of the school year as a result of the former wife's decision to relocate due to domestic problems. During the period of time that the former husband was primarily caring for the child, the former wife, who was no longer living with her boyfriend, exercised regular visitation with the child.
On June 1, 2001, the day that the former wife had planned to pick the child up to resume primary care, the former husband filed an emergency motion for temporary custody of the minor child and a petition to modify the final judgment of the dissolution of marriage. The trial court granted the former husband's emergency motion for temporary custody ex parte on June 1, 2001, based upon the former husband's allegation that the former wife was involved in an abusive relationship that placed the child in danger.
The trial court referred the former husband's motion for modification of final judgment of the dissolution of marriage as to child custody to a general master for an evidentiary hearing. During the hearing, the former husband testified as to the former wife's poor housekeeping skills and the "atrocious" state of the former wife's home. The former husband testified that the former wife had asked him to care for the child while the former wife "was getting her life together," which included moving out of her boyfriend's house and returning to school. The former wife's father and stepmother stated in an affidavit that the former wife was not properly caring for the child, that her home was ill-kept, and that the former wife's boyfriend had used physical violence against the former wife. The former husband provided testimony suggesting instability in the former wife's relationship with her boyfriend. He also testified that in early December, the former wife called him stating that her boyfriend had struck her and threatened to evict her from the house. The child was in the former husband's care at the time of this incident.
The former wife's father testified that there had not been any significant changes in the former wife's lifestyle before or after the divorce became final in December of 1999. The former wife's stepmother and the former husband stated that the former wife's living conditions began to deteriorate at the time she began residing with her boyfriend in St. Augustine, prior to December 1999. They also acknowledged that even when the parties were married, the former wife was never a good housekeeper.
On September 26, 2001, after hearing all of the evidence, the general master issued his Report for General Master Regarding Former Husband's Motion for Modification of Final Judgment of Dissolution of Marriage. The general master made factual findings that the former wife's residence was in disarray, her children were unkempt, and that the former husband testified that the change in the former wife's living conditions was a developing pattern not present at the time of the divorce. The general master found that "the Wife is unstable as to her living conditions, that her judgment used was, and is, poor, and her children and residence were ill-kept," that "the minor child ... has a close bond with both of her parents and both should remain as an integral part of her life," and that "evidence does justify a change in custody to best protect the minor child's best interest."
*320 The former wife timely filed exceptions to the general master's report, which the trial court denied. On July 18, 2002, the trial court entered its Amended Order on Former Husband's Motion for Modification of Final Judgment of Dissolution of Marriage, changing the primary residential custody of the parties' minor child from the former wife to the former husband. This appeal followed.
In her first argument, the former wife contends that the former husband failed to meet his extraordinary burden of proving a substantial and material change in circumstances. We begin our analysis with the established principle that the trial court does not have the same broad discretion to modify custody that it exercises in initial determinations of custody. See Neely v. Neely, 691 So.2d 39, 40 (Fla. 1st DCA 1997); Dobbins v. Dobbins, 584 So.2d 1113, 1116 (Fla. 1st DCA 1991); Zediker v. Zediker, 444 So.2d 1034, 1037 (Fla. 1st DCA 1984); Walfish v. Walfish, 383 So.2d 274, 275 (Fla. 3d DCA 1980). The party seeking a modification of custody carries an extraordinary burden of proving both elements of a two-pronged test. The party must demonstrate that there has been a substantial and material change of circumstances since the time of the final judgment of dissolution and that the welfare of the child will be promoted by the change in custody. Young v. Young, 732 So.2d 1133, 1134 (Fla. 1st DCA 1999); Zediker, 444 So.2d at 1036. A trial court reviews a general master's report to determine whether the report was clearly erroneous or misconstrued the law. De Clements v. De Clements, 662 So.2d 1276, 1282 (Fla. 3d DCA 1995).
In Young, this Court reversed the trial court's order modifying custody, thereby returning custody to the former wife. 732 So.2d at 1134. The trial court had relied on the facts that the former wife had had another child out of wedlock and that the living conditions of the former wife and child were "less than ideal" to conclude that the father would be "better" for the child. Id. at 1135. This Court held that no evidence was presented that the care or living conditions provided by the former wife were detrimental to the child. Id. Similarly, in Walfish, the Third District reversed a modification of custody where the trial court made findings that "the mother's home had been dirty and that the children had been unkempt." 383 So.2d at 275. The Third District determined that under such circumstances modification of custody was an abuse of the trial court's discretion. Id.
The facts in Young are very similar to the facts here, where the former wife was also living with the father of her second child in conditions aptly described as "less than ideal." Here, the general master made findings that the former wife's "children and residence were ill-kept," just as the trial courts in Young and Walfish had. Yet, based upon these cases, such facts are not sufficient to constitute a substantial and material change in circumstances and, thus, do not support a modification of custody. See also Bartolotta v. Bartolotta, 687 So.2d 1385, 1387 (Fla. 4th DCA 1997) (holding that the trial court's conclusion that the mother's "poor" parenting skills were a sufficient basis for modifying custody was an abuse of discretion); Kelly v. Kelly, 642 So.2d 800, 802 (Fla. 2d DCA 1994) (reversing modification of custody because evidence that the mother moved and changed jobs frequently and had lived with an abusive boyfriend was not sufficient to warrant modification without evidence that the mother was failing to meet the child's needs); Ours v. Ours, 515 So.2d 281, 283 (Fla. 1st DCA 1987) (reversing modification of custody where there was no evidence that the mother's live-in *321 relationships had adversely affected her children). Therefore, while the evidence in the instant case establishes that the former wife's home had at times been poorly kept and that her children were unkempt, these circumstances alone do not constitute a substantial and material change in circumstances, especially when the general master failed to make any findings that the child was harmed by such circumstances.
Furthermore, in alleging changed circumstances, the former husband asserted in his emergency motion for temporary custody and motion to modify custody that the change in circumstances arose from the former wife being in an abusive relationship that would cause harm to the child. However, the testimony presented at the hearing focused on the cleanliness of the former wife's children and residence, as reflected in the general master's findings that the former wife's children were "dirty and unkempt" and the former wife's home was "ill-kept." The general master's report briefly mentions the former wife's relationship with her boyfriend but makes no reference to that relationship's impact on the child. Where the trial court does not make findings regarding the allegations asserted in the petition to modify custody, those allegations have no bearing on the trial court's decision to modify custody. See Bartolotta, 687 So.2d at 1387. Where there are no findings as to the effect of the former wife's relationship or living conditions on her child, a substantial and material change in circumstances cannot be found. See id. at 1387. Because the trial court did not make any findings regarding the effect of the former wife's relationship upon the child, that relationship cannot provide evidence of a substantial and material change in circumstances.
For these reasons, the trial court's modification order, which is based upon the general master's findings, lacks a legally sufficient basis for modifying custody as the general master's factual findings are legally insufficient to establish the substantial and material change of circumstances required to modify primary residential custody. Accordingly, we reverse.
REVERSED.
BOOTH, WEBSTER and LEWIS, JJ., concur.