82 So.3d 109 (2011)
Jackie Glenn RAGLE, II, Appellant,
v.
Maria B. RAGLE, Appellee.
No. 1D10-5518.
District Court of Appeal of Florida, First District.
August 15, 2011.
*110 Colleen A. White, Jacksonville Beach, for Appellant.
Maria B. Ragle, Fleming Island, pro se, Appellee.
THOMAS, J.
Appellant/Former Husband appeals the lower court's order modifying primary residential custody of the parties' minor children, the imputation of minimum wage income to Appellee/Former Wife, and denial of his motion for contempt. We reverse as to the first issue, and affirm without further comment as to the remaining two issues.

Factual Background
The parties were divorced by a Consent Final Judgment of Dissolution of Marriage in 2008, which provided shared parental responsibility for their four minor children, and that Appellant retain primary physical custody of the minor children in the marital home located in Clay County. Appellant decided to move to St. Johns County in early 2009, in part so that he could transfer the oldest child to a different school. The distance between the marital home and the new residence was approximately 28 miles.
Subsequently, Appellee filed two motions for contempt, alleging Appellant failed to sufficiently share parental responsibility by, inter alia, not conferring with her about his decision to move and transfer the oldest child to a new school; however, Appellee did not seek to prevent Appellant's move to St. Johns County. In its ruling on the school transfer, the trial court noted Appellant's change of residence, but did not question it and declined to second-guess Appellant's decision.
Appellee then filed an amended petition to modify the Consent Final Judgment based on an alleged substantial change in circumstances. Appellee asserted that the consent judgment provided that Appellant would raise the children in the marital home, allow the children to go to the same school, and they would share parental responsibility. Appellee alleged Appellant does not share parental responsibility or allow frequent and liberal visits and telephone communication, and "dictates" when she can visit or talk to the children, that Appellant was emotionally abusive to the children and depended on his mother to provide care and support for the children. She further asserted that Appellant unilaterally decided to move to St. Johns County, which is detrimental to her relationship with her children.
After a hearing, the court issued an order and attached a new custody/time-sharing arrangement. After finding that Appellant "unilaterally moved to St. Johns County with the minor children over [Appellee's] objection," the court, without reciting any supporting findings of fact, concluded that this move was "harmful to the minor children in that it deprives [Appellee] of visitation and is detrimental to the well being of the minor children."
The court also found, this time with some supporting facts, that:

*111 Dr. Stephen Bloomfield completed a child custody evaluation and submitted a report dated April 26, 2010. Dr. Bloomfield concluded that the minor children "were not living in a stable, satisfactory environment", p. 41, at the time of the evaluation and that the current time sharing plan was no longer working since [Appellant] moved to St. John's [sic] County, and the evaluator opined that there was "no overwhelming reason to maintain the current community.", p. 41, Dr. Bloomfield concluded that the current time sharing plan was detrimental to the children unless the parties agreed to move closer together.
The court adopted Dr. Bloomfield's findings, and ultimately concluded that "these factors taken and considered in the totality of the circumstances made it clear that it would be detrimental to the minor children for primary residential responsibility to remain with [Appellant]."
The hearing was not transcribed. In lieu of a hearing transcript, Appellant submitted a 36-page Statement of Proceeding pursuant to rule 9.200(b)(4), Florida Rules of Appellate Procedure. The record reflects no objection to the Statement. The court approved the Statement, subject to the handwritten changes it made.

Analysis
Appellate courts review orders modifying custody for abuse of discretion. Lewandowski v. Langston, 969 So.2d 1165, 1169 (Fla. 5th DCA 2007). This being said, however, it is an
established principle that the trial court does not have the same broad discretion to modify custody that it exercises in initial determinations of custody. The party seeking a modification of custody carries an extraordinary burden of proving both elements of a two-pronged test. The party must demonstrate that there has been a substantial and material change of circumstances since the time of the final judgment of dissolution and that the welfare of the child will be promoted by the change in custody.
Boykin v. Boykin, 843 So.2d 317, 320 (Fla. 1st DCA 2003) (citations omitted); see also Jablon v. Jablon, 579 So.2d 902, 903 (Fla. 2d DCA 1991) (holding court has considerably less discretion in a modification proceeding); Cooper v. Gress, 854 So.2d 262, 267 (Fla. 1st DCA 2003) ("The posture of a modification proceeding is entirely different from that of an initial custody determination, and the party seeking to modify custody has a much heavier burden to show a proper ground for the change.").
Pursuant to section 61.13(3), Florida Statutes, "A determination of parental responsibility, a parenting plan, or a time-sharing schedule may not be modified without a showing of a substantial, material, and unanticipated change in circumstances and a determination that the modification is in the best interests of the child." As we stated in McKinnon v. Staats:
The trial judge determines what is in the best interest of the child, and the appellate court should not reverse those findings absent a showing of an abuse of discretion. Our scope of review is not whether reasonable people could differ as to the conclusion of the trial court, but whether there was "competent and substantial evidence revealing that substantial or material changes in the parties' circumstances had occurred subsequent to the dissolution and that a change of custody would promote the best interests of the children involved."
899 So.2d 357, 359 (Fla. 1st DCA 2005) (citations omitted; emphasis in original). Appellee failed to overcome this burden of proof, and the trial court abused its discretion by ordering a modification of custody *112 because "[t]he evidence presented here did not amount to a substantial change in circumstances to warrant a post-dissolution modification of custody." Id. at 361.
The crux of Appellee's request for modification is Appellant's decision to move the children to a new home 28 miles from their previous home. Appellee sought a modification of custody based on "a substantial change in circumstances," including Appellant's decision to move out of the former marital home and relocate to the adjoining county, failure to allow "frequent and liberal visitation and telephonic communication" between Appellee and the children, and changing the children's schools. Our review of the record shows that each of these alleged instances of a substantial change in circumstance stems from Appellant's relocation to St. Johns County. Indeed, the trial court cited the portion of Dr. Bloomfield's report finding that the first time-sharing plan approved by the trial court "was no longer working since [Appellant] moved to St. John's [sic] County" and that it would not work unless the parties agreed to move closer. Our review of the record indicates that all of Appellee's alleged problems with Appellant's continued custody of the children began after he moved.
"A desire to relocate alone, as a matter of law, is not a substantial change in circumstances sufficient to warrant modification of custody." Segarra v. Segarra, 947 So.2d 543, 547 (Fla. 3rd DCA 2006); see also Ogilvie v. Ogilvie, 954 So.2d 698, 701 (Fla. 1st DCA 2007) (holding relocation alone, even if to another state, was not a substantial change in circumstances); Sotomayor v. Sotomayor, 891 So.2d 559, 561 (Fla. 2d DCA 2004) (holding that "a custodial parent's move to a foreign state, without more, is not a substantial change of circumstances that would support a modification of custody"); Jablon, 579 So.2d at 904 (holding "[t]he fact that one parent moves frequently and has a less stable life-style than the other does not in and of itself constitute a substantial change meriting modification of custody.").
Without reciting any supporting facts, the trial court found that Appellant repeatedly limited Appellee's contact with the children, which demonstrated Appellant's "inability to co-parent with" Appellee. Our review of the Statement of Proceedings and the record does not reveal any competent, substantial evidence to support this finding. In fact, the order entered by the previous judge in response to Appellee's contempt motions noted Appellee was interfering with Appellant's efforts to discipline the oldest child after an event that occurred while the child was visiting with Appellee. Furthermore, although the dissent points to Appellee's allegation that the reason for Appellant's decision to move to St. Johns County was to limit Appellee's access to the children and alienate her from the family, the prior judge specifically found that the reason for the move was to allow Appellant to enroll the oldest child in a new school due to issues with people with whom she was associating at her former school.
The trial court also relied on Dr. Bloomfield's child custody evaluation, finding that Dr. Bloomfield concluded the children were not living in a stable environment; the time-sharing plan in the original custody order was no longer working since Appellant relocated; there was "no overwhelming reason to maintain the current community"; and the time-sharing plan was detrimental to the children unless the parties agreed to move closer together. Although these conclusions focus in large part on Appellant's relocation, it is evident that the real problem was not Appellant's relocation per se, but the strain the move *113 put on an already antagonistic relationship between the parties. The report simply recommended that the situation would improve if the parties lived closer to each other, thus making it easier for Appellee to exercise her visitation, which in turn would lead to less friction. This is not the standard for determining whether a custody order should be modified, nor is the fact that Dr. Bloomfield found "no overwhelming" reason to keep the status quo. Notably, the custody evaluator did not suggest changing custody; rather, he suggested the situation would improve if the parties lived closer together.
In Ogilvie, this court reiterated that parents' inability to communicate does not satisfy the substantial change requirement for modification. 954 So.2d at 701. See also Sanchez v. Hernandez, 45 So.3d 57, 62 (Fla. 4th DCA 2010) (holding father seeking custody modification "needed to prove more than merely an acrimonious relationship and a lack of effective communication in order to show a substantial change"); Ring v. Ring, 834 So.2d 216 (Fla. 2d DCA 2002) (holding fact that the parties failed to communicate and had continuing hostility does not constitute a material change in custody to warrant modification of custody). It is abundantly clear from the pleadings, the custody evaluation, and the Statement of Proceedings that the primary problem was the parents' refusal to adequately communicate and cooperate. While this may have been exacerbated by Appellant's minor relocation, this is not sufficient to raise this to the level of a substantial change in circumstances.
Although the dissent points to the trial court's finding that Appellant was "back to drinking and uses medications to excess" (a ground not alleged by Appellee in her petition), there was no competent, substantial evidence to support either this conclusion or the trial court's conclusions that Appellant "tends to alienate" Appellee from the children. The trial court's blanket statement that it adopted Dr. Bloomfield's findings does not salvage the order for at least two reasons. First, with the exception of the instability in the children's living environment, the trial court's order provides no guidance as to which findings in Dr. Bloomfield's lengthy report constitute evidence of a substantial change in circumstances. Second, Dr. Bloomfield's report addressed issues, such as marital discord between Appellant and his current wife, which were neither alleged by Appellee nor cited by the court as a ground for modification. We reiterate that because custody modifications disrupt children's lives, trial courts enjoy a lesser degree of discretion in custody modification proceedings than they do when making an initial custody determination, and such orders need specificity and substance to be affirmed.
Significantly, according to the Statement of Proceedings, Appellee argued at the conclusion of the hearing that she was better positioned to care for the children now that she was a stay-at-home mother. However, the test for determining whether a custody order should be modified "`involves more than a decision that the petitioning parent's home would be "better" for the child, and requires a determination that there is some significant inadequacy in the care provided by the custodial parent.'" Young v. Young, 732 So.2d 1133, 1134 (Fla. 1st DCA 1999) (quoting Gibbs v. Gibbs, 686 So.2d 639, 641 (Fla. 2d DCA 1996)). Furthermore, the Straney case relied upon by the dissent is distinguishable. That case involved an order that changed a custody order's time-sharing arrangement to give one of the parties more time with the child, not a change in custody.
*114 As noted in Boykin, the test for proving entitlement to custody modification has two prongs: 1) whether there is a substantial and material change of circumstances; and 2) whether the child's welfare will be promoted by a change in custody. The party seeking custody modification must overcome the "extraordinary burden of proving both elements." 843 So.2d at 320. It is therefore incumbent on the trial court to apply this extraordinary burden test. See Hastings, 875 So.2d at 779 (holding trial court abused its discretion by modifying custody without applying extraordinary burden test). The court here failed to do so. Our review of the court's order and the record leads us to the conclusion that Appellee failed to demonstrate a substantial and material change of circumstances; consequently, it is unnecessary to address the second prong of the test.

Conclusion
For the foregoing reasons, Appellee failed to establish the existence of a substantial and material change in circumstances warranting modification of the Consent Final Judgment of Dissolution of Marriage. Thus, the order on appeal is REVERSED to the extent it modifies the previous custody and time-sharing arrangement, and the matter is REMANDED for proceedings consistent with this opinion. Those portions of the trial court's order imputing minimum wage income to Appellee and denying Appellant's motion for contempt are AFFIRMED.
AFFIRMED in part, REVERSED in part, and REMANDED.
WETHERELL, J., concurs.
SWANSON, J., concurs and dissents with opinion.
SWANSON, J., concurring in part and dissenting in part.
I respectfully dissent to the extent the majority reverses the modification of the parties' previous custody and time-sharing agreement on the ground the former wife failed to establish the existence of a substantial and material change in circumstances. The majority states the "crux of Appellee's request for modification is Appellant's decision to move the children to a new home 28 miles from their previous home." This assertion is inconsistent with the record, in particular with the "Former Wife's Supplemental Petition for Modification of Parental Responsibility, Children's Residence and Visitation/Time Sharing Parenting Plan" as well as the trial court's "Order on Parties' Cross Supplemental Petitions for Modification and Motion for Contempt."
Specifically, in addition to issues generated by the move, the former wife's pleading asserted the former husband is emotionally abusive to the minor children, works all the time, is rarely home, and depends upon his mother to provide care for the children. The former wife also asserted the former husband does not encourage and promote the children's relationship with their mother, that he disparages her in front of the children, and that the move to St. John's County was an effort by the former husband to limit the former wife's access to the children and to alienate her from the family.
Consistent with the former wife's pleading, the trial court found the former husband tends to alienate the former wife from the minor children, manifests an inability to co-parent, and is "back to drinking and uses medications to excess." The trial court further found the minor children "were not living in a stable, satisfactory environment." In doing so, the trial court relied on Dr. Bloomfield's child custody evaluation, which was admitted into evidence at the hearing. I believe this evaluation contains sufficient evidence of a substantial, *115 material, and unanticipated change in circumstances from which the trial court could conclude a modification of the original custody and time-sharing agreement was warranted.
"It is well established that an order modifying child custody must be based on a determination that: (1) a substantial and material change in circumstances has occurred since the entry of the final judgment, (2) it is in the child's best interest to modify custody, and (3) the change in circumstances was not reasonably contemplated when the trial court entered the original final judgment." Straney v. Floethe, 58 So.3d 374, 375 (Fla. 2d DCA 2011). As in Straney, the trial court in this case did not make an express finding that a substantial, material, and unanticipated change in circumstances supported modification of child custody. Similarly, the record here does not permit this court to conclude such a finding is implicit in the order. However, I would reverse and remand for further proceedings consistent with Straney, which would give the trial court the opportunity to make an express finding based on the evidence already received or to take additional evidence before rendering a decision. Id. at 375-76.