472 So.2d 843 (1985)
Linda Sidoti PALMORE, Appellant,
v.
Anthony J. SIDOTI, Appellee.
No. 84-2483.
District Court of Appeal of Florida, Second District.
July 12, 1985.
*844 Sylvia H. Walbolt, Peter W. Zinober and Kathleen S. Edwards of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, for appellant.
Ellen D. Ostman, Tampa, for appellee.
LEHAN, Judge.
In this child custody dispute the mother appeals from the order of the trial court which relinquished jurisdiction to a Texas court. Being guided by a consideration of the best interests of the child, we affirm. We conclude that the trial court did not err in determining that Texas is the more appropriate and convenient forum. We also conclude that the United States Supreme Court's reversal of this court's affirmance of a prior trial court order changing custody of the child from the mother to the father did not ipso facto require that custody revert at this time back to the mother.
When the parties were divorced in 1980, the wife was given custody of their daughter, Melanie, who was three years old at the time. Several months after the divorce, the husband remarried and petitioned for custody of the daughter. The father's petition alleged, among other things, that the mother, who is white, was living with a black man. After a hearing and an investigation by a social worker, the trial court on March 1, 1982, entered an order transferring custody of Melanie to her father. The court's order stated that there was no issue as to either party's devotion to the child, adequacy of housing facilities, or respectability of the new spouse of either parent. (During the pendency of the proceedings, the mother had married the man she had been living with, Clarence Palmore.) The court recited several of the father's allegations concerning the condition of the child, including that the child had head lice on two occasions and was sent to school in mildewed clothing. However, the court made no findings in those regards or with regard to the parental qualifications of either party. The order placed reliance upon the fact that the mother had married and was living with a black man, which the court concluded would cause Melanie to suffer from social stigmatization.
On appeal this court affirmed, 426 So.2d 34 (Fla.App. 1982). The case was then appealed to the U.S. Supreme Court, which concluded that the effects of racial prejudice could not be a consideration in removing a child from the custody of its mother who has been found to be an appropriate person to have custody. Palmore v. Sidotti, 466 U.S. 429, 104 S.Ct. 1879, 80 L.Ed.2d 421 (1984). In laying the groundwork for the constitutional issue the Supreme *845 Court's opinion noted that, while the trial court "did not focus directly on the parental qualifications of the natural mother or her present husband," the court's order contained no negative finding as to the quality of care provided by the mother, thus constituting a rejection at that time of any claim of the mother's unfitness to continue custody of Melanie. 466 U.S. at ___, 104 S.Ct. at 1881, 80 L.Ed.2d at 424. The Supreme Court reversed the affirmance of this court. On remand, this court adopted the opinion of the Supreme Court and reversed and remanded the cause for further proceedings consistent with that Supreme Court opinion.
Meanwhile, the father and his new wife had moved to Texas. On the day the Supreme Court announced its decision, the father filed with a Texas court an application for a temporary restraining order. The mother subsequently filed in Texas a petition for a writ of habeas corpus to recover possession of the child. In Florida, the mother filed a motion to compel return of the child to her custody. In Texas, the court found that the best interests of Melanie were the primary concern of the court and that for purposes of further interim orders it had jurisdiction of the child. In addition, the Texas court appointed the father as "temporary managing conservator" of Melanie. The Texas court also appointed an attorney-ad-litem for Melanie and ordered a social study of her home in Texas.
Back in Florida, the trial court denied the father's motion to dismiss the mother's motion to compel return of Melanie to the mother and granted the father's motion to stay proceedings. An attorney-ad-litem was appointed for Melanie. The court also ordered a custody investigation and home study evaluation. The court ordered the parties to submit briefs on the issue of the court's jurisdiction over Melanie.
On August 23, 1984, the Texas judge wrote a letter to the Florida judge in which the Texas judge said that the Texas court would accept jurisdiction in the cause and undertake whatever actions were in the best interests of the child.
In the Florida trial court's order of October 12, 1984, which is the subject of this appeal, the court declined jurisdiction in favor of the Texas court. The order noted that even if the Florida court had jurisdiction, it could nevertheless decline to exercise jurisdiction if it finds that it is an inconvenient forum to make a custody determination and that another state is a more appropriate forum. In this regard the trial court said,
Regardless of whether Texas or Florida is found to be Melanie's "home state", she has in fact resided in Texas with Mr. Sidoti for some 20 months. Accordingly substantial evidence concerning her present care, protection, training and personal relationship would be more readily available in Texas than in Florida. Under the circumstances herein, it cannot be said that either Texas or Florida has a closer connection with Melanie and her family. Moreover, in view of the Texas court's declaration that it will accept and exercise jurisdiction in this cause, the exercise of jurisdiction by this court would clearly be in contravention of the purposes stated in Florida Stats. § 61.1304... . [T]his court's exercise of jurisdiction would run contra to that stated purpose of promoting cooperation among courts to the end that a custody decree is rendered in the state which can best decide the case in the interest of the child.
It is contended on behalf of the mother that the Florida court erred in declining to exercise jurisdiction under the Uniform Child Custody Jurisdiction Act (UCCJA). We cannot agree. It is not necessary to decide whether there is Florida jurisdiction because we cannot conclude that the trial court erred in its finding that Texas is the more appropriate and convenient jurisdiction. See section 61.1316(3), Florida Statutes (1983). Melanie has been living in Texas for the past two and one-half years. We cannot say that the trial court was in error in concluding that substantial evidence *846 concerning Melanie's care, protection, training and personal relationships would be more readily available in Texas than in Florida.
The mother contends that Melanie's period of residence in Texas should not be considered because the father violated a court order by moving Melanie out of Florida without court approval. However, the father had legal custody of Melanie when he moved her to Texas. Thus, his violation of the court order was not to obtain custody of the child. The trial court in its October 12, 1984, order stated
A close examination of the facts indicates that while Mr. Sidoti may be in violation of this Court's order by relocating Melanie without prior court approval, there is nothing to indicate that this relocation was either an abduction or was undertaken in order to obtain a custody award. On the contrary, the facts indicate [that] Mr. Sidoti relocated to Texas for business reasons and that he did so prior to his having obtained actual physical custody of Melanie. Moreover, Mrs. Palmore was advised through counsel of the relocation and it was not until over a year later that she complained of such to this Court. Had Mr. Sidoti sought court approval prior to relocating with Melanie, such approval might very well have been granted, for it appears that the move was occasioned for valid purposes with no ulterior motives.
These aspects distinguish this case from Hegler v. Hegler, 383 So.2d 1134 (Fla. 5th DCA 1980), cited by the mother. In Hegler, a father, notwithstanding a court order giving the mother custody of their child, took the child from her mother in Maryland without court permission and moved the child to Florida. The Hegler court determined that Maryland, the state of the mother's residence, was the proper jurisdiction, noting that a purpose of the UCCJA is to discourage child snatching. That purpose is not determinative here.
It is also ably contended on behalf of the mother that as a result of the Supreme Court's reversal of the order granting custody of Melanie to her father the custody situation should revert to what it was before that order was entered so that the mother would again have custody. We cannot agree under the particular facts of this child custody case. That is a contention to be considered by the Texas court along with any other fundamentally important factors which might have existed in March 1982 or thereafter. Also, contrary to the mother's contention, we do not believe the Supreme Court's opinion requires that custody be given to the mother. The Supreme Court's decision was that the modification of custody could not be predicated upon the mother's association with a black man. Its opinion did not direct a reinstatement of the original custody decree and the immediate return of the child. The Supreme Court did not say that a Florida court could not defer to a Texas court. The situation at hand was not before the Supreme Court, and we are not persuaded that if it were, the Supreme Court would agree with the mother's contention. Also, as noted above, this court remanded the case for further proceedings.
The issue of who should now have permanent custody of Melanie is not resolved. We express no opinion as to whether the father or the mother should ultimately prevail. We believe there are no facts in the present record on the basis of which that issue should finally be resolved. However, we cannot say that it is not possible that the father may prevail. His original petition for custody purports to allege reasons for his having custody in addition to the reason disapproved by the Supreme Court. The October 12, 1984, order notes that those reasons allegedly involved, in addition to the allegations noted above which were referred to, but not directly focused upon, by the trial court in March 1982, inattention by the mother to the child's nutrition and schooling. Also, we have no knowledge from the record of any relevant events which might have occurred during the relatively long period subsequent to the trial court order which was the basis for the appeal to the Supreme Court. Under *847 all the circumstances we cannot say that at this time it has been established to be in Melanie's best interests that she be ordered returned to her mother and that the trial court erred in not so ordering.
The eight-year-old child appears to have had substantial upheavals of her life, and we find no compelling reason at this point to add a further upheaval. The record indicates that Melanie lived with both her parents until they separated when she was about two and one-half years old. She then lived with her mother for about two years until her father was awarded custody. After only two months with her father, Melanie was returned to her mother by court order. She stayed with her mother for about eight months, and then was ordered to her father's custody, where she has remained for about two and one-half years except for a ten-day visit with her mother in August 1984. We cannot disagree that it appears to be in the best interests of Melanie that she continue in the status quo at least for the time being until the custody issue is finally resolved.
There appears to be no reason to conclude that the Texas court's determination of this matter will not be expeditiously made. Also, there appears to be no reason to conclude that the period of time during which the father has had custody by virtue of what has been established to have been an unconstitutional reason would determinatively be considered by the Texas court in improper derogation of the interests of the mother. There is no doubt that, as the Texas judge indicated in his letter to the Florida judge and as established by Florida law as reiterated by the U.S. Supreme Court in its above referenced opinion, the paramount perspective must relate to the best interests of the child. We have no basis to conclude that the Texas court will not distinguish between any considerations which could flow from any seeming tactical advantage in this dispute derived by the father from the most recent period of time he has had with the child as compared to the fundamentally important factors to be weighed in resolving a matter of this kind. Yet in the consideration to be given by the Texas trial court to the merits of this case, we do not believe that the period from the March 1, 1982, order up to the present should be entirely viewed as a "time-out." A child custody suit is not a game to be played for the benefit of either parent.
CAMPBELL, A.C.J., and SCHOONOVER, J., concur.