BLACK, Judge.
.D.M.J.[1] (the Father) challenges various orders entered by the trial court following the final judgment of paternity. The Father contends, among other things, that the court failed to consider the statutory best interests of the child in entering the orders, on appeal. We agree and reverse.
■. A final judgment .of paternity was rendered..in July 2011 in .this. case. Incorporated into that final judgment were, a mediation agreement and a parenting plan. The parenting plan established a weekly rotating time-sharing schedule and provided that when the child became eligible for kindergarten the parents would revisit the issue of education and return to mediation if necessary. The parenting plan" was otherwise silent as to education. In-August 2015 A.J.T. (the Mother) filed a petition for an order granting modification of the final judgment of paternity regarding the parenting plan, time-sharing, and child support. The Mother alleged that the Father had moved “some twenty-five miles, one way, from where he resided at the time of the entry of the final judgment.” She claimed this was a substantial and material change in circumstances warranting mQdification. The Mother alleged that síie had to “drive an extra nine miles, one way, to meet the Father to ¿xchange the child.” “ ’ '
The Mother’s proposed parenting plan allowed her 305 nights with the child, as compared to the . prior 183, and increased the child support.obligation of the Father accordingly, The Mother’s plan also designated her as the ultimate decision maker as to education and nonemergency healthcare decisions.
After an evidentiary hearing, the court granted the' Mother’s petition,. The court approved the.Mother’s parenting plan, including the time-sharing schedule; designated her the ultimate decision maker as to education and nonemergency healthcare decisions; and ..named Hillsborough Sehpol A, the Mother’s preferred school, as the school ⅛ which, the child would enroll.[2] The Father then filed a motion for,rehearing, which the court granted in part. An *1131 amended order granting the Mother’s petition was entered.
The Father timely appealed the amended order and subsequently filed a motion for stay pending appeal. The Father alleged that the Mother was unable to enroll the child in Hillsborough School A as ordered by the court, that she falsely represented, the school to which , she was zoned, and that the Mother had unilaterally .enrolled the child in Hillsborough School B, a ■school not approved by the court. This court affirmed the denial of the stay but relinquished jurisdiction of the. appeal to allow the Father to file a motion for relief from judgment ora supplemental petition for modification based upon the impossibility of enrollment in the school designated in the amended final order. The Father’s motion was granted in part, and a supplemental final judgment of paternity was rendered by the trial court.[3] In the order granting in part the- .Father’s motion to vacate the amended order, the court stated that the designation of Hillsborough School A was a mistake but that it was the court’s intention to order that the child’s school designation be based on the Mother’s address. The court then entered the supplemental final judgment of paternity to include the provision that the Mother’s residence should be used to détermine the child’s school designation. The Father filed a notice of appeal, and the two cases were consolidated here.[4]
On appeal, the Father argues that the evidence was insufficient to establish a substantial, material, ■■ and unanticipated change supporting modification of parental responsibility and time-sharing. He contends that the testimony at the hearing on the Mother’s petition established that at the time of the final judgment the Father’s address was in Pasco County and that he had not moved a substantial distance from that address. He also argues that the court’s order granting the Mother’s petition adopted the Mother’s proposed order without alteration and that the order contains unsupported findings. As to the supplemental final judgment, the Father argues that, the court erred in failing to hold an evidentiary hearing on the schooling issue where the court’s rationale in initially determining the child’s school designation included the quality of Hillsborough School A.
“[A] time-sharing schedule may not be modified without a showing of a substantial, material, and unanticipated change in circumstances and a determination that the modification is in the best interests of the child.” Griffith v. Griffith, 133 So.3d 1184, 1186 (Fla. 2d DCA 2014) (alternation in original) (quoting § 61.13(3), Fla. Stat. (2012)). “It is well settled that- in order to modify a timeshar-ing plan there must be a substantial change in circumstances.” George v. Lull, 181 So.3d 538, 540 (Fla. 4th DCA 2015) (citing Wade v. Hirschman, 903 So.2d 928, *1132 932 (Fla.2005)). And “the petitioning party has the extraordinary burden to prove the'substantial change in circumstances.” Id.
“In custody disputes involving the relocation of a parent, courts generally conclude that the relocation does not amount to a substantial change if the relocation is not a significant distance away from the child’s current location.” Halbert v. Morico, 27 So.3d 771, 772 (Fla. 2d DCA 2010). In Halbert, this court concluded that a forty-five-mile move was not a substantial change warranting modification. Id.; see also Ragle v. Ragle, 82 So.3d 109, 112 (Fla. 1st DCA 2011) (concluding that the court abused its discretion in modifying time-sharing where “[t]he crux of Ap-pellee’s request for modification is Appellant’s decision to move the children to a new home [twenty-eight] miles from their previous home”). The amended order granting the Mother’s petition does not make a finding that a substantial change has occurred. Nor does the court indicate that its findings and modification -of the time-sharing plan are based upon the Father’s move,- the only change alleged in the Mother’s petition. Cf. Griffith, 133 So.3d at 1186 (remanding for reconsideration where “the trial court did make a specific finding that there was a substantial change in circumstances; however,, neither the final order of modification nor the court’s oral pronouncement specifies what that substantial change is. Furthermore, there is nothing in the record to specifically suggest that the trial court considered the best interests of the children”).
We note that the Mother’s petition did not include the reservation of jurisdiction over the schooling issue as a basis for modification and that the court’s order does not indicate that the parties attempted -to mediate the issue as required by the original parenting plan. However, and despite the fact that we cannot agree with the trial court’s implicit finding that the Father’s move was substantial, the original parenting plan required the parties to address the schooling of the child once she became of school age.
Where the final judgment reserves jurisdiction to determine school enrollment and the parties are unable to agree on the minor child’s school, they are required to obtain a court order on the issue. Dickson v. Dickson, 169 So.3d 287, 289-90 (Fla. 5th DCA 2015). “In such a circumstance, the court must resolve the impasse by determining the .best interests of the child.” Id. (citing § 61.13(2)(c), (3), Fla. Stat. (2014)). The child’s best interests may warrant modification of time-sharing. See id. at 290, -But the trial court abuses its discretion by modifying the time-sharing agreement without findings or evidence that a modification is in the best interests of the child. Holland v. Holland, 140 So.3d 1155, 1157 (Fla. 1st DCA 2014).
The amended order contains few findings with respect to the best interests of the child. The court found that it was not in the best interests of the child to travel two hours to and from exchanges. This finding states that it is based on the Mother’s testimony regarding travel timé from her home to the Father’s home. The court found the testimony of the Father and his witnesses regarding travel time of forty-five minutes not credible. The trial court also found that it was in the best interests of the child to enroll in and attend Hills-borough School A and, as a result, to spend weekdays with the Mother during the school year. Although the court also allocated alternating weekends to the Mother, the court made no findings in that regard.
At the end of the evidentiary hearing on the Mother’s petition, as to the primary *1133 question of. school enrollment, the court stated:
The Father’s proposal of enrollment is in a Pasco County school, which I don’t see [as] an option at this point. It’s a ■Hillsborough County school ■ system. We’re in Hillsborough County... ¡ So then that narrows us down to [Hillsbor-ough School-A] which is by-all accounts a good school. The question is then what do' you do with [the child’s] time-sharing. ... [A]nd therein lies the rub because no matter what you do, if she goes to a regular school every Monday through Friday starting in the fall, one of you if you had fifty-fifty would have to drive a very long way every day to pick her up and make her ride round-trip several hours a day on top of her school day, and I do not find that’s in her best interest.
Based on the hearing transcript and the order, it appears the court considered only “[t]he geographic viability of the parenting plan, with special attention paid to the needs of [the] school-age child[] and the amount of time to' be spent traveling to effectuate the " parenting plan.” § 61.13(3)(e), Fla. Stat. (2014). There'is no mention of the Father’s other children — the child’s half sibling and' stepsi-bling — in the order. Nor does the amended order address the child’s bond with her siblings. There is an absence of any findings' or indications that the court considered the child’s ■ relationship with her siblings. See § 61.13(3)(t); Munson v. Munson, 702 So.2d 583, 583 (Fla. 2d DCA 1997); Griffith v. Griffith, 627 So.2d 527, 528 (Fla. 2d DCA 1993). There is also no indication that the court considered evidence of “[t]he demonstrated capacity and disposition of each parent to determine, consider, and act upon the needs of the child as opposed to the needs or desires of the parent,” § 61.13(3)(c); “[t]he length of time the child has lived in a stable, satisfactory environment and the desirability of’ maintaining continuity,” § 61.13(3)(d); ■ “[t]he home, school, and community record of the child,” § 61.13(3)(h); or “[t]he demonstrated knowledge, capacity, and disposition of each parent to be informed of the circumstances of the minor child, including, • but not limited to, the child’s friends, teachers, medical care providers, daily - activities, and favorite things,” § 61.13(3)(j).
We also agree with the Father that the court erred in adopting the Mother’s proposed order and, parenting plan because many of the findings in the order are unsupported. Although “Florida does not prohibit the verbatim adoption of a judgment that has been proposed by a party,” Bishop v. Bishop, 47 So.3d 326, 328 (Fla. 2d DCA 2010), “the adopted judgment ‘cannot substitute for a thoughtful and independent analysis of the facts, issues, and law by the trial judge,’” id. (quoting Perlow v. Berg-Perlow, 875 So.2d 383, 390 (Fla.2004)). “[T]he trial court is obligated to make rulings on all issues raised based on its own thoughtful and independent analysis of the facts, the evidence presented, and. the law that applies.” Id. at 329.
The most pertinent unsupported finding in the court’s amended order is that it takes the Mother two hours roundtrip to travel between her residence and the Fa-, ther’s residence. . The transcript of the hearing reflects that the Mother twice testified that roundtrip the' drive takes approximately .forty minutes. In fact, all-witnesses who were asked the question testified that it takes approximately forty minutes to drive roundtrip from residence to residence. The only testimony about two hours of travel time was the Mother’s statement that she did not believe, it was in the child’s best interest “to travel two hours for a three-hour program of schooling” (a voluntary prekindergarten program).
*1134 As to the issue of the child’s schooling the amended order and supplemental final judgment .disregard relevant evidence.. The order omits the fact that the Father’s stepchild and nieces, with whom the child has bonded, attend Pasco School A, to which the Father is zoned and about which testimony was presented.[5] It also omits that the Father offered to meet the Mother halfway for school drop off and pick up during the weeks that the Mother had the child. Further, the court found it was in the best interests of the child to attend Hillsborough School A despite the fact the Mother testified that she did not know if her residence was zoned for Hillsborough School A and the Father testified that according to the school district information available on the internet, the Mother was not zoned for Hillsborough School A. Testimony was presented regarding the relative quality of both Hillsborough School A and Pasco School A, which the order accurately reflects; however, no information was presented as to Hillsborough School B, the school in which the child was ultimately enrolled. This lack of evidence is' the basis for the Father’s claim of error in failing to hold an evidentiary hearing bn his motion to vacate before entering' the supplemental final judgment.*
While there are many findings in the amended order, as proposed by the Mother and adopted by the court, thé court essentially made two findings at the close of the hearing: (1) that the child would attend Hillsborough School A because “this is a Hillsborough County case” and Hillsborough School A is a good school and (2)-that spending two'hours in the car on weekdays is not in the child’s best interest. Unfortunately, both of the court’s findings are unsupported. First, the Father’s residence is in Pasco County, where the child has been enrolled in a voluntary prekindergarten program and has spent fifty percent of her time for approximately four years. That this is a Hillsborough County case does not control the issue of where the child will attend school. Cf. Halbert, 27 So.3d at 772-73 (reversing time-sharing modification where one parent moved from Pinellas County to Hillsborough County because that move did not warrant modification). Second, the evidence’ does not support the finding that the child would be travelling for two hours a day if the child attended Pasco School A. Moreover, this court has previously held that a forty-five-mile relocation of a parent — increasing the drive time to and from school — “is not so substantial as to justify a change in the custody arrangement as required by Wade, 903 So.2d at 933.” Halbert, 27 So.3d at 773. While this is not a substantial change case because of the reservation in the final judgment of paternity to determine the child’s schooling, Halbert’s implicit conclusion — that spending additional time in the car driving to and from school is not determinative of the child’s best interests — applies equally in this case. And given the Father’s testimony regarding his ability to meet the Mother at a halfway .point, the school designation pay not solely determine, time-sharing.
Accordingly, we reverse and remand for an evidentiary hearing to consider -the statutory-best interests of'the child. We encourage the trial court to handle this matter as expeditiously as possible on remand and to enter any necessary temporary orders, as' both time-sharing and the child’s school designation remain at issue.
Reversed and remanded.
NORTHOUTT and SLEET,=JJ„ Concur.

. Because this is a paternity proceeding, although postjudgment, we refer to "the parties by initials. See 742.09, Fla. Stát. (2015). ’

. Rather than name the schools involved or potentially involved in this case, we have chosen to identify them as Hillsborough School A, Hillsborough School B, and. Pasco School A. ...

. In its order granting in part the Father’s motion to vacate, the court correctly noted that although it had previously granted the Mother’s petition, ,a supplemental final judgment of paternity had not been entered. Thus, the court entered the supplemental final judgment in conjunction with the order on the Father’s motion, incorporating the relevant provisions of the orders granting the Mother’s petition and granting in part the Father's motion to vacate.

; On the same day that the Father appealed the supplemental final judgment of paternity, the Mother filed a motion pursuant to Florida ■ Rule of Civil Procedure 1.540 to correct a clerical error in the supplemental judgment. The court granted the motion and entered an amended supplemental final judgment of paternity. We need riot address the Father's argument' that the trial court did not have ¡jurisdiction to- consider the’.Mother’s-motion as that ruling is mooted, by, our reversal of the supplemental final judgment of paternity.

. The child’s half-sibling is younger and is not yet school aged.